**ZIEGLER LAW GROUP LLC**
Jason J. LeBoeuf (#033612001)
Kerdesha Desir (#378182021)
651 Old W. Mt. Pleasant Avenue, Suite 150
Livingston, NJ 07039
Telephone: (973) 533-1100
jason@zlgllc.com

**COOLEY LLP**
Ephraim A. McDowell
Elias S. Kim
1299 Pennsylvania Ave., NW, Suite 700
Washington, DC 20004
Telephone:  (202) 842-7800

*Counsel for Defendant Daniel Torres*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> *Plaintiff,* <br><br> v. <br><br> RAHEEL NAVIWALA, <br><br> *Defendant*. <br><br> UNITED STATES OF AMERICA, <br><br> *Plaintiff,* <br><br> v. <br><br> DANIEL TORRES, <br><br> *Defendant.* | Nos. 2:24-CR-99 (MWB) <br> 2:24-CR-0378 (MWB) |

**SUPPLEMENTAL BRIEF OF DEFENDANT DANIEL TORRES IN
ACCORDANCE WITH THE MARCH 9, 2026 ORDER**

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ...................................................................................................1

ARGUMENT .........................................................................................................2

    A.    The proper interpretation of 28 U.S.C. § 542 (and, to the extent relevant, 28 U.S.C. §§ 509-510, 515-519, 547, and F.R.Cr.P. 1(b)(1)(B), 6(d)(1), and 7(c)(1)).........................................................3

    B.    The precedential value of *Gantt, Hilario,* and *Suescun*, as well as the cases following them ..................................................................10

    C.    Whether any earlier cases bear on the question of the authority of assistant United States attorneys to prosecute independently of a United States Attorney or a delegation of authority from the Attorney General other than 28 U.S.C. § 542 ...................................13

    D.    Whether the Attorney General has, by regulation, internal guidance, order, or any other legally effective means other than 28 U.S.C. § 542, delegated her authority to assistant United States attorneys without requiring a redelegation by a United States Attorney ..............................................................................13

    E.    The general legality of subordinates' continued exercise of delegated authority in the total absence (*i.e.* vacancy) of the delegator ....................................................................................14

    F.    Whether an indictment is valid in the absence of *any* prosecutor with sufficient authority ................................................................17

    G.    Whether and how officers at Main Justice supervised the preparation and approval of Torres's superseding indictment...........19

CONCLUSION....................................................................................................20

# TABLE OF AUTHORITIES

**Page(s)**

### Cases

*Baker v. United States*,
 139 F.2d 721 (8th Cir. 1944) ...............................................................................10

*Bank of Nova Scotia v. United States*,
 487 U.S. 250 (1988)...............................................................................................18

*Cirko ex. rel. Cirko v. Comm'r of Soc. Sec.*,
 948 F.3d 148 (3d Cir. 2020) .................................................................................17

*Cody v. Kijakazi*,
 48 F.4th 956 (9th Cir. 2022) .................................................................................10

*Collins v. Yellen*,
 594 U.S. 220 (2021)..........................................................................................17, 19

*Emerson v. Fisher*,
 246 F. 642 (1st Cir. 1918)......................................................................................15

*Intercollegiate Broad Sys. v. Copyright Royalty Bd. & Librarian of Cong.*,
 796 F.3d 111 (D.C. Cir. 2015)..............................................................................17

*Laurel Baye Healthcare of Lake Lanier, Inc. v. NLRB*,
 564 F.3d 469 (D.C. Cir. 2009)..............................................................................15

*Lucia v. SEC*,
 585 U.S. 237 (2018)................................................................................................17

*Mapp v. Ohio*,
 367 U.S. 643 (1961)..................................................................................................1

*New Process Steel, L.P. v. N.L.R.B.*,
 560 U.S. 674 (2010)..........................................................................................15, 16

*Ryder v. United States*,
 515 U.S. 177 (1995)................................................................................................17

# TABLE OF AUTHORITIES
## continued

**Page(s)**

*San Pedro v. United States*,
  79 F.3d 1065 (11th Cir. 1996) ...................................................................13

*United States v. Baldwin*,
  541 F. Supp. 2d 1184 (D.N.M. 2008)..........................................................12

*United States v. Comey*,
2025 WL 3266932 (E.D. Va. Nov. 24, 2025)..............................................18

*United States v. Forman*,
  71 F.3d 1214 (6th Cir. 1995) .................................................................3, 9

*United States v. Gantt*,
  194 F.3d 987 (9th Cir. 1999) ........................................................10, 11, 13

*United States v. Giraud*,
  795 F. Supp. 3d 560 (D.N.J. 2025)..........................................................9, 10, 15

*United States v. Hilario*,
  218 F.3d 19 (1st Cir. 2000)..........................................................10, 11, 13

*United States v. Male Juv.*,
  148 F.3d 468 (5th Cir. 1998) ...................................................................13

*United States v. Ramirez*,
  807 F. Supp. 3d 1086 (C.D. Cal. 2025) ...................................................12

*United States v. Rosenthal*,
  121 F. 862 (C.C.S.D.N.Y. 1903) ..............................................................18

*United States v. Suescun*,
  237 F.3d 1284 (11th Cir. 2001) ...........................................................10, 12, 13

*United States v. Touby*,
  909 F.2d 759 (3d Cir. 1990), ...................................................................14

*United States v. Trump*,
  740 F. Supp. 3d 1245 (S.D. Fla. 2024)...................................................17, 18

**TABLE OF AUTHORITIES**
continued

**Page(s)**

*Young v. U.S. ex rel. Vuitton et Fils S.A.*,
   481 U.S. 787 (1987)................................................................................18

**Statutes and Rules**

18 U.S.C. § 3731 ...................................................................................11

28 U.S.C.
   § 509...........................................................................................3, 6, 8
   § 510...........................................................................................3, 6, 8
   § 515...........................................................................................3, 6, 8
   § 516.....................................................................................7, 8, 12, 19
   § 517..............................................................................................7, 8
   § 518..............................................................................................7, 8
   § 519........................................................................................3, 6, 7, 8
   § 541...............................................................................................7
   § 542.................................................................................3, 4, 5, 12, 13
   § 542(a) .........................................................................................5, 14
   § 546...............................................................................................7
   § 546(d) ...........................................................................................11
   § 547........................................................................................3, 5, 7
   § 547(1)..........................................................................................4, 7

F.R.Cr.P.
   1(b)(1)(A).........................................................................................9
   1(b)(1)(B).......................................................................................3, 8
   1(b)(1)(D)......................................................................................3, 18
   6(d)(1) .......................................................................................3, 8, 18
   7(c)(1) .....................................................................................3, 8, 9, 11

**Miscellaneous**

Restatement (Third) of Agency § 3.06(2)-(3).........................................................15

## <u>INTRODUCTION</u>

To the extent the Government raises the specter of an individual accused of a crime being set free, the sage words of Justice Clark provide a ready response: "The criminal goes free, if he must, but it is the law that sets him free.  Nothing can destroy a government more quickly than its failure to observe its own laws, or worse its disregard of the character of its own existence." *Mapp v. Ohio*, 367 U.S. 643, 659-660 (1961).  The Defendant does not take lightly the relief he seeks.  But that relief is proportionate to the serious nature of the constitutional and statutory violations in this case.  The Government has insisted on doing things its way—in disregard of the law.  The only acceptable remedy at this juncture is dismissal.

The statutes and case law about which this Court has sought clarification do not support the Government.  Those laws never contemplated an Executive repeatedly and willfully flouting them and conducting *ultra vires* prosecutions.  But that is what has happened.  What has befallen the District of New Jersey represents an egregious violation of the Constitution and the Federal Vacancies Reform Act (FVRA) that must be met with a commensurate remedy.  To allow this indictment to stand despite the Executive's clear transgression of the Appointments Clause would be to license the Government's misconduct.  Carrying this Court's logic to its fruition mandates a dismissal of Mr. Torres's superseding indictment—one sought and filed by the U.S. Attorney's Office for this District, and signed by Ms. Habba, after this Court already determined that Ms. Habba should not be serving in the capacity of U.S. Attorney.

It should be of no consequence that Ms. Habba had little or no involvement in the actual presentment of the matter or the events leading up to its presentment. It will often be the case that the actual U.S. Attorney for a particular district will have little to no involvement in a "run-of-the-mill" grand jury presentment.

Ultimately, this Court's opinion raises a profound question: "[W]hy does the fate of criminal prosecutions in this District potentially rest on the legitimacy of an unprecedented and byzantine structure?" Op. 9. The answer is that this Administration has continuously sought to evade the clear pathway to legitimacy that the Executive has followed for centuries: Presidential appointment and Senate confirmation of U.S. Attorneys—or at least the lawful filling of a vacancy through an interim or acting appointment. And the reason the Executive here has pursued such evasion is that it has feared no reprisal for its continued constitutional violations. Given this Court's conclusion that "the Government's explicit motivation for making these personnel moves and delegations is to unilaterally fill the office of the United States Attorney," Op. 56, the superseding indictment—which subjects Mr. Torres to a potential life sentence—must be met with the swift and just remedy of dismissal. Accordingly, even before addressing Your Honor's enumerated concerns in turn (which will also lead to the same conclusion), it should be emphasized that the superseding indictment must be dismissed because there is no other viable remedy that will give teeth to this Court's decisions.

## **ARGUMENT**

Turning now to the Court's enumerated inquiries:

2

**A.**     <u>The proper interpretation of 28 U.S.C. § 542 (and, to the extent relevant, 28 U.S.C. §§ 509-510, 515-519, 547, and F.R.Cr.P. 1(b)(1)(B), 6(d)(1), and 7(c)(1))</u>

The Assistant U.S. Attorneys (AUSAs) who secured the superseding indictment in this case were not valid prosecutors for the Government when they secured and signed the indictment. Only "attorneys for the government" may present an indictment to a grand jury or sign an indictment. F.R.Cr.P. 6(d)(1), 7(c)(1). But the Federal Rules define "attorney for the government" as "an *authorized* assistant" U.S. Attorney and an "attorney *authorized* by law to conduct proceedings under these rules as a prosecutor." F.R.Cr.P. 1(b)(1)(B), (D) (emphasis added). As the Sixth Circuit has explained, "authorized" does not simply refer "to *any* assistants to a United States Attorney or to the Attorney General who have been duly appointed and taken the oath of office." *United States v. Forman*, 71 F.3d 1214, 1220 (6th Cir. 1995). Thus, the Government must identify some statutory authority that allowed the AUSAs to present and sign the superseding indictment.

No such authority exists. As this Court explained, "it is self-evident" that the "role" of an AUSA is "limited to 'assist[ing] United States attorneys.'" Op. 80 (quoting 28 U.S.C. § 542(a)). But when the AUSAs here purported to secure the superseding indictment, there was no valid U.S. Attorney to "assist." Indeed, an AUSA "must look to the United States Attorney 'for authority to act,'" *id.*, and here no U.S. Attorney could have provided such authority. Absent such authority, "an AUSA cannot be granted such authority that he eclipses, subsumes, or replaces the United States Attorney that is his direct statutory superior." *Id.*

3

Any authority, then, would have needed to flow directly from the Attorney General. But the Government has cited no statute or regulation that confers that authority. Indeed, none of the provisions in question suggests that the Attorney General can simply continue the business of the District when the Executive has flouted multiple statutes and the Appointments Clause. All such statutes and rules only anticipate the ordinary course of business in district U.S. Attorney's Offices when a validly appointed and confirmed U.S. Attorney (or one sitting temporarily by law) is in place. Mr. Torres addresses each provision cited by the Court in turn:

**28 U.S.C. § 542**

> (a) The Attorney General may appoint one or more assistant United States attorneys in any district when the public interest so requires.
> (b) Each assistant United States attorney is subject to removal by the Attorney General.

This provision should be interpreted as written. The Attorney General can appoint and remove AUSAs in a particular district. But just because AUSAs may be appointed and removed by the Attorney General does not suggest that they may automatically exercise all of the Attorney General's powers—even absent a valid U.S. Attorney. To the contrary, 28 U.S.C. § 547(1) makes clear that "each United States attorney, within his district, shall . . . prosecute for *all* offenses against the United States." And notably, Section 542 falls within Chapter 35 of Title 28, which is entitled "United States Attorneys." It should therefore be read in conjunction with the premise that a duly appointed U.S. Attorney will be serving. It should not be read to allow a U.S. Attorney's Office to continue securing indictments even while the Executive rejects every available legal option for appointing a U.S. Attorney.

4

Notwithstanding the Attorney General's authority to appoint AUSAs, the USAO-NJ is not run by the Attorney General. As this Court observed, "the Office continues to be funded using appropriations earmarked" for "United States Attorneys." Op. 7. And even if "that appropriation can be reassigned freely"—which is doubtful—the Government has not actually "reappropriated the relevant funds to a different account that would reflect that change in authority." *Id.* at 115.

Thus, nothing in Section 542 should give this Court pause about dismissing the indictment. The Government has never suggested that the Attorney General appointed the AUSAs in this case for purposes of this prosecution. And any reliance on Section 542 would be ironic because that provision allows the Attorney General to appoint AUSAs only "when the public interest so requires." 28 U.S.C. § 542(a). Here, as the Court articulated in two separate opinions, the Executive's circumvention of the Appointments Clause and continued attempt to unilaterally fill the office in question contravenes the public interest.

In short, Section 542 provides that AUSAs may be appointed and removed by the Attorney General. But the authority to appoint and remove AUSAs does not entail the power to grant them full prosecutorial powers even absent supervision by a U.S. Attorney. As the Court held, "[i]f an AUSA does not rely on the United States Attorney for authority or is not otherwise subject to the United States Attorney's supervision, he is not acting as an assistant and has exceeded the powers of his statutory office." Op. 80-81. And as noted, Section 547 plainly empowers the U.S. Attorney—not AUSAs—to prosecute all offenses in the relevant district.

5

**28 U.S.C. §§ 509-510, 515-519**

To borrow from this Court's Order, the above-cited statutes dealing with the powers of the Attorney General are not "relevant" to any "extent," Op. 127, and should be given no weight by the Court. Admittedly, the statutes in question appear at first blush to give broad powers to the Attorney General. But as the Court noted, they in fact amount to no more than a "convoluted patchwork of statutory cross-references." *Id.* at 23.

The cited statutory provisions are as follows:

- 28 U.S.C. § 509 "vest[s]" the Attorney General with "[a]ll functions of other officers of the Department of Justice and all functions of agencies and employees of the Department of Justice." That provision simply vests the Attorney General with, among other functions, the prosecutorial functions of AUSAs—but it does not say that she may transfer to AUSAs the plenary power to fulfill those functions without the supervision by a U.S. Attorney.

- 28 U.S.C. § 510 states that the Attorney General "may from time to time make such provisions as he considers appropriate authorizing the performance by any other officer, employee, or agency of the Department of Justice of any function of the Attorney General." As this Court has already explained, "section 510 is not unlimited." Op. 105-06 (citing *United States v. Giordano*, 416 U.S. 505 (1974) and *Halverson v. Slater*, 129 F.3d 180 (D.C. Cir. 1997)). And Section 510 "leaves to other sources of law the determination of which functions are delegable *and to whom*." *Id.* at 106. Here, no other source of law suggests that the Attorney General may delegate plenary prosecutorial authorities to AUSAs outside of a U.S. Attorney's supervision.

- 28 U.S.C. § 515 provides that "[t]he Attorney General or any other officer of the Department of Justice . . . may, *when specifically directed by the Attorney General*, conduct any kind of legal proceeding, civil or criminal." (emphasis added). Here, the AUSAs who signed the superseding indictment are officers of the Department of Justice (DOJ). But the Government has cited no evidence that the Attorney General specifically directed them to seek the superseding indictment in this case.

6

- 28 U.S.C. § 516 states that "[e]xcept as otherwise authorized by law, the conduct of litigation in which the United States . . . is a party . . . is reserved to officers of the Department of Justice, under the direction of the Attorney General." This provision gives the Attorney General generic authority to "direct[]" the "conduct of litigation" for the government. But Section 516 does not authorize the Attorney General to delegate full prosecutorial powers to AUSAs without any supervision by a U.S. Attorney. Nor is there any evidence that the Attorney General directed the superseding indictment here.

- 28 U.S.C. § 517 states that "[t]he Solicitor General, or any officer of the Department of Justice, may be sent by the Attorney General to any State or district in the United States to attend to the interests of the United States in a suit pending in a court of the United States." This provision is designed to allow the Attorney General to send any DOJ attorney to intervene or participate in a pending case that does not already involve the United States as a party. It does not speak to the issue here.

- 28 U.S.C. § 518 allows the Attorney General to "personally conduct and argue any case" in federal court. The Attorney General did not personally conduct the case against Mr. Torres.

- 28 U.S.C. § 519 states that the Attorney General "supervise[s] all litigation to which the United States . . . is a party and . . . direct[s] all United States attorneys [and] assistant United States attorneys . . . in the discharge of their respective duties." This provision allows the Attorney General to direct AUSAs in their duty of assisting a U.S. Attorney. But it does not suggest that the Attorney General may empower AUSAs to prosecute cases *themselves*, rather than as an aide to a U.S. Attorney. Section 547 confirms the point by making clear that it is the "[d]ut[y]" of "each United States attorney, within his district" to "prosecute for *all offenses* against the United States." 28 U.S.C. § 547(1) (emphasis added). If the Attorney General could simply delegate full prosecutorial powers to AUSAs in a district, then the Attorney General could displace the U.S. Attorney's power under Section 547.

But again, the salient issue is that these statutes are not meant to create a loophole in the Appointments Clause, the FVRA, 28 U.S.C. § 541, or 28 U.S.C. § 546. They were not designed to effectively nullify the office of the U.S. Attorney

for the District of New Jersey.  As the Court indicated in its opinion, "[a]ll of these canons of interpretation drive toward one simple proposition: Courts 'should not lightly conclude that Congress enacted [a] self-defeating statute[s].'"  Op. 94 (citation omitted).  Thus, the Attorney General's authorities necessarily exist in conjunction with the presence of the U.S. Attorney for each respective district.  As this Court explained, "whether vested in her through section 509, 515, 516, 517, 518, or 519, she may not delegate those powers to permit anyone to perform the function and duties of a vacant PAS office."  Op. 64.[1]

Granted, if there were a validly confirmed U.S. Attorney for the District of New Jersey, there might not be reason to dismiss this indictment simply because it was supervised by the Attorney General or her designee.  But that is not what happened here.  The Government has utilized a "convoluted patchwork of statutory cross-references," Op. 23, not only to craft an improper leadership structure, but also to try to justify unconstitutionally obtained indictments.  Only dismissal of the superseding indictment here would be commensurate with the serious nature of the Government's violation.

### F.R.Cr.P. 1(b)(1)(B), 6(d)(1), and 7(c)(1).

F.R.Cr.P. 1(b)(1)(B) defines "Attorney for the Government" to include "a United States Attorney or authorized assistant," as well as "any other attorney authorized by law to conduct proceedings under these rules as a prosecutor."

---

[1] There is no evidence that the AUSAs responsible for the superseding indictment in the present matter were "Special Attorneys" assigned by the Attorney General.  *See* 28 U.S.C. § 515.

F.R.Cr.P. 6(d)(1) indicates that while the grand jury is in session, "attorneys for the government," among others not relevant here, may be present.  F.R.Cr.P. 7(c)(1) outlines the nature and contents of an indictment—namely, as it pertains to the present matter, that it must be "signed by an attorney for the government."

None of these procedural rules suggests that the indictment here is valid. Instead, the definition of "attorney for the government" makes clear that an AUSA or other prosecutor must be "authorized" to present an indictment to the grand jury. And such authorization must derive from some applicable statute or other source of law—which, as shown above, does not exist here.  *See Forman*, 71 F.3d at 1220. Moreover, while the Court has not specifically asked the parties to address F.R.Cr.P. 1(b)(1)(A), it is no accident that a distinction is drawn when defining "attorney for the government" between (A) "the Attorney General or an authorized assistant," and (B) "a United States attorney or an authorized assistant."  Unsurprisingly, the Rules clearly presume that there would be a U.S. Attorney for the District.

Next, while F.R.Cr.P. 7(c)(1) requires the indictment to be "signed by an attorney for the government," it does not permit what happened here.  To be sure, the indictment was signed by an AUSA—but that AUSA was not "authorized" to seek the indictment.  And beyond that, the matter was presented by this AUSA despite this Court's August 21, 2025 Order, *see United States v. Giraud*, 795 F. Supp. 3d 560 (D.N.J. 2025), *aff'd,* 160 F.4th 390 (3d Cir. 2025), seemingly because

the AUSA's superior determined that the continued prosecution of matters despite the absence of a validly serving U.S. Attorney was acceptable.[2]

In addition, these procedural rules were not promulgated with the anticipation that they would be utilized to circumvent the Appointments Clause. "[A] procedural rule" cannot "take away from any person . . . a substantial right given him by law." *Baker v. United States*, 139 F.2d 721, 723 (8th Cir. 1944). An Appointments Clause violation is clearly a violation of a substantial right. *See Cody v. Kijakazi*, 48 F.4th 956, 960 (9th Cir. 2022) ("An Appointments Clause violation is thus no mere technicality or quaint formality—it weakens our constitutional design.").

Ultimately, the Government cannot rely on any of the above statutes or rules to uphold this superseding indictment. This indictment was brought as part of a grave constitutional violation, after this Court had already admonished the Government for its attempts to evade the Appointments Clause. No reading of the foregoing statutes and rules can excuse the Government's unprecedented conduct. And absent a remedy of dismissal here, there is every reason to think that the Government will simply try to evade the Appointments Clause yet again.

B. **The precedential value of _Gantt, Hilario,_ and _Suescun_, as well as the cases following them**

These cases offer no precedential value to the matter presently before the Court. As the Court correctly noted, Op. 125-27, these decisions were not issued by the Third Circuit—so at most, they could be nonbinding, persuasive authority. But

---

[2] It is not farfetched to surmise that this conclusion was reached because the Court stopped short of granting the remedy of dismissal in *Giraud*.

10

they lack even persuasive force because they all addressed the issue of remedy only in *dicta* and none adequately grappled with the statutory authorities cited above. They did not need to do so because, unlike here, none of the courts concluded that the relevant U.S. Attorney had been unlawfully appointed.  To reiterate, the actions of the current Executive have placed this District in uncharted territory.

In *United States v. Gantt*, 194 F.3d 987 (9th Cir. 1999), the Ninth Circuit determined that it had "to reach the merits of Gantt's constitutional challenge" to Section 546(d) because 18 U.S.C. § 3731 "specifically requires certification" of certain appeals "by 'the United States Attorney.'" *Gantt*, 194 F.3d at 998.  The court then noted in *dicta* that "[t]he constitutionality of § 546(d) would not affect the validity of indictments, . . . as indictments need only be signed by an 'attorney for the government.'" *Id.*  But the court cited only F.R.Cr.P. 7(c)(1), *id.*, and Mr. Torres has already explained why that Rule cannot justify the AUSAs' actions here.

In *United States v. Hilario*, 218 F.3d 19 (1st Cir. 2000), the First Circuit rejected a defendant's argument that it lacked appellate jurisdiction because the notice of appeal was signed by an allegedly improperly appointed interim U.S. Attorney.  *Id.* at 22.  The court "assum[ed], for argument's sake," that the interim U.S. Attorney had been unlawfully appointed.  *Id.*  And the court concluded that an "AUSA's signature" on the notice of appeal "was sufficient to validate [it]." *Id.*  In so doing, the court observed that AUSAs "are appointed directly by the Attorney General," and "their ability to act does not hinge on the authority of the local United States Attorney, but derives from the Attorney General's plenary power over litigation to which the United States is a party." *Id.*  But the court cited only Sections

11

516 and 542 for that proposition. *Id.* And as already explained, neither of those authorities allows the Attorney General to directly delegate litigation powers to AUSAs even in the absence of a validly serving U.S. Attorney.

In *United States v. Suescun*, 237 F.3d 1284 (11th Cir. 2001), the Eleventh Circuit stated that "[a]n appointment of a United States Attorney that is not made as provided by the Appointments Clause does not affect the Government's power to prosecute." *Id.* at 1287. But that statement does not address the situation here— where AUSAs prosecuted a case absent any valid delegation from a U.S. Attorney, Special Attorney, or Attorney General. The court then declined to address the defendant's "alternative argument" that the AUSA lacked "authority to represent the Government," deeming that argument "waived." *Id.* at 1288. Thus, the court never considered the arguments that Mr. Torres presents for dismissal in this case.[3]

So, although these cases might indicate in *dicta* that the supervision of a validly serving U.S. Attorney is not required to validate an indictment, none of them considered a situation such as the one before the Court, *i.e.*, a self-imposed vacancy in the U.S. Attorney's Office. As such, these cases are not dispositive, binding, or even helpful. The Court should place no reliance on them.

---

[3] Nor do any district court decisions "conduct[] a detailed textual analysis of the relevant statutory provisions." Op. 125; *see id.* at 125 nn. 533 & 534. By way of example, the court in *United States v. Ramirez*, 807 F. Supp. 3d 1086, 1108-09 (C.D. Cal. 2025), simply cited many of the statutory provisions discussed above, without grappling with their text or structure. In addition, some of the cases that this Court referenced in footnotes 533 and 534 are factually distinguishable. *E.g.*, *United States v. Baldwin*, 541 F. Supp. 2d 1184, 1214 (D.N.M. 2008) (indictment "filed during the tenure of a duly-appointed United States Attorney").

12

**C.**     **Whether any earlier cases bear on the question of the authority of assistant United States attorneys to prosecute independently of a United States Attorney or a delegation of authority from the Attorney General other than 28 U.S.C. § 542**

The Defendant has identified no case predating *Gantt*, *Hilario*, or *Suescun* that would support the contention that AUSAs may prosecute independently of a U.S. Attorney or a delegation of authority from the Attorney General.

**D.**     **Whether the Attorney General has, by regulation, internal guidance, order, or any other legally effective means other than 28 U.S.C. § 542, delegated her authority to assistant United States attorneys without requiring a redelegation by a United States Attorney**

Like the Court, counsel for the Defendant has reviewed DOJ regulations and the Justice Manual and has not identified therein any clear delegation of authority from the Attorney General to AUSAs that does not flow through the U.S. Attorney. *See* Op. at 126-27 & n.542.  But even if such a provision were to be found in the Justice Manual, an "internal manual [is] not a statute or regulation.  As such, the fact that it may provide for a general delegation of duties to the AUSAs . . . does not affect the pre-existing specific statutory and regulatory delegation." *United States v. Male Juv.*, 148 F.3d 468, 471 n.6 (5th Cir. 1998).  For similar reasons, the validity of any purported delegation through a purely internal manual or other non-public document would be dubious at best.  If anyone is to assert authority to prosecute someone criminally in the name of the United States, the source of their authority should not lie in some obscure manual or be a secret known only to the Government. *Cf. San Pedro v. United States*, 79 F.3d 1065, 1071 (11th Cir. 1996) ("In order to be effective, a delegation of statutory authority from the Attorney General to other

federal officials must be both *explicit* and *affirmative*." (emphasis in original));

*United States v. Touby*, 909 F.2d 759, 770 (3d Cir. 1990), (the Attorney General must "explicitly" subdelegate authority "in order for the subdelegatee to be empowered to act"), *aff'd*, 500 U.S. 160 (1991); Op. 127 ("The idea that the Attorney General implicitly delegates full prosecutorial authority to AUSAs without any clear limits or defined supervisory structure strikes me as problematic to say the least.").

**E.      The general legality of subordinates' continued exercise of delegated authority in the total absence (*i.e.* vacancy) of the delegator**

Foundational principles of agency and administrative law dictate that a subordinate's delegated authority terminates immediately when the delegating principal ceases to hold lawful office or the principal office is entirely vacant. As the Court correctly stated, "[t]he AUSA is … fully reliant on the United States Attorney for authority and, in the absence of the delegating United States Attorney, the *AUSA's delegated power is extinguished*." Op. 80 n.352 (emphasis added). Here, that means that when the lawful tenure of the previous interim U.S. Attorney expired, any continuing delegated authority possessed by the line-level AUSAs in the District of New Jersey was "extinguished." That is because under 28 U.S.C. § 542(a), Congress established the U.S. Attorney as the statutory principal and the AUSA strictly as the subordinate "assistant"—*i.e.*, the statutory agent. Because all of the District's AUSAs' authority is therefore wholly derivative of the U.S. Attorney to whom they are assigned, their prosecutorial power was extinguished the moment that the delegating U.S. Attorney's did. As this Court held, that occurred

14

on July 1, 2025, when Ms. Habba's tenure as a constitutionally valid officer ended. *Giraud*, 795 F. Supp. 3d at 604. After that point, she possessed no lawful authority to redelegate to the AUSAs in the first place.

As this Court recognized, these principles of agency law may inform how courts evaluate delegations of authority in government. *See, e.g.*, *See Laurel Baye Healthcare of Lake Lanier, Inc. v. NLRB*, 564 F.3d 469, 473 (D.C. Cir. 2009) (cited at Op. 80 n.352) (relying on the Restatement (Third) of Agency in evaluating a delegation of authority within a federal agency). Those principles dictate that a subordinate cannot exercise delegated authority where there is no validly authorized principal to delegate such authority. *See id.* ("[A]n agent's delegated authority terminates when the powers belonging to the entity that bestowed the authority are suspended" and "is also deemed to cease upon the resignation or termination of the delegating authority."); Restatement (Third) of Agency § 3.06(2)-(3) ("An agent's actual authority may be terminated by . . . the principal's death, cessation of existence, or suspension in powers."); *Emerson v. Fisher*, 246 F. 642, 648 (1st Cir. 1918) (holding that a corporate treasurer's delegee lacks authority to disburse corporate funds after the treasurer resigns).

The Supreme Court's decision in *New Process Steel, L.P. v. N.L.R.B.* confirms that a delegee cannot continue exercising delegated authority once the principal no longer has authority to act. 560 U.S. 674, 687 (2010). There, the Court considered whether a delegation clause in the National Labor Relations Act—which required three members for a quorum of the Board to delegate authority to a smaller group of members—deprived the two-member delegee group of power when the full Board

15

no longer had a quorum. *Id.* at 676-80. The Court held that "two remaining Board members cannot exercise such authority." *Id.* at 676. In reasoning relevant here, the Court rejected a reading of the statute that would "allow[] two members to act as the Board *ad infinitum*, which [would] dramatically undercut[] the significance of the Board quorum requirement by allowing its permanent circumvention." *Id.* at 681. "That reading [would] also make[] the three-member requirement in the delegation clause of vanishing significance, because it [would] allow[] a *de facto* delegation to a two-member group." *Id.*; *see id.* at 685-86 (rejecting reading that would "negate for all practical purposes the command that a delegation must be made to a group of at least three members"). As the Court explained, the power to delegate "does not authorize the Board to create a tail that would not only wag the dog, but would continue to wag after the dog died." *Id.* at 688.

These lessons apply equally here: once the principal (the U.S. Attorney) lacks legal authority, the subordinate delegee (the AUSA) loses the power to act on behalf of the principal to do what the principal cannot. And without some other source of authority, such as a statute directly vesting authority in the AUSA or a valid delegation of authority from another official (*e.g.*, the Attorney General), an AUSA lacks capacity to wield governmental power during a period when no person is validly serving as U.S. Attorney. Thus, in the absence of any such alternative source of authority, an AUSA purporting to act on delegated authority flowing from or through Ms. Habba had no more valid authority than she did.

16

**F.**     **Whether an indictment is valid in the absence of *any* prosecutor with sufficient authority**

An indictment is invalid when the only prosecutors who secured it lacked governmental authority.  When a court determines that a putative officer exercised "power that the actor did not lawfully possess," including because she was not "properly appointed," that ruling renders her past actions "void."  *Collins v. Yellen*, 594 U.S. 220, 257-58 (2021).  Indeed, because "officials cannot wield executive power except as Article II provides," "[a]ttempts to do so are void."  *Id.* at 283 (Gorsuch, J., concurring in part).

Applying these principles, the Supreme Court has invalidated judgments issued or reviewed by improperly appointed adjudicators.  In *Ryder v. United States*, 515 U.S. 177 (1995), the Court "reversed" the court-martial conviction of a defendant after he successfully challenged the appointment of the appellate judges who reviewed his case.  *Id.* at 188.  And in *Lucia v. SEC*, 585 U.S. 237 (2018), the Court set aside an agency adjudication conducted by an improperly appointed official.  *Id.* at 251.  Likewise, the Third Circuit has concluded that "an individual litigant need not show direct harm or prejudice caused by an Appointments Clause violation" because "[s]uch harm is presumed."  *Cirko ex. rel. Cirko v. Comm'r of Soc. Sec.*, 948 F.3d 148, 154 (3d Cir. 2020); *see Intercollegiate Broad Sys. v. Copyright Royalty Bd. & Librarian of Cong.,* 796 F.3d 111, 123 (D.C. Cir. 2015).

In *United States v. Trump*, 740 F. Supp. 3d 1245 (S.D. Fla. 2024), the court applied these principles when dismissing an indictment after concluding that the prosecutor who secured it lacked a valid appointment.  The court explained that

17

because the individual's "exercise of prosecutorial power has not been authorized by law," there was "no way forward aside from dismissal of the Superseding Indictment." *Id.* at 1302.  Indeed, the government there did not even "propose an alternative course." *Id.*  The court reasoned that "[i]nvalidation follows directly from the government actor's lack of authority to take the challenged action in the first place." *Id.* at 1302-03 (citation omitted).

The same analysis applies under ordinary criminal-law principles.  The "customary harmless-error inquiry" does not govern in the case of a "fundamental" error that compromises the "structural protections of the grand jury." *Bank of Nova Scotia v. United States*, 487 U.S. 250, 256-57 (1988).  Such errors "render the proceedings fundamentally unfair, allowing the presumption of prejudice." *Id.*

Where, as here, the only individuals who present an indictment to a grand jury lack valid governmental authority—and are thus no differently situated than a private citizen—that error is fundamental. *United States v. Comey*, 2025 WL 3266932, at *13 (E.D. Va. Nov. 24, 2025).  As noted, only "attorney[s] authorized by law" to act "as a prosecutor" may conduct grand jury proceedings. F.R.Cr. P. 1(b)(1)(D); *see* F.R.Cr.P. 6(d)(1).  And here, the AUSAs were not such authorized prosecutors—yet they held themselves out as such.  Just as the "appointment of an interested prosecutor" is a "fundamental" error that "undermines confidence in the integrity of the criminal proceeding," so too is a grand jury presentation by a prosecutor who lacks authority to "wield [the] formidable criminal enforcement powers" at all. *Young v. U.S. ex rel. Vuitton et Fils S.A.*, 481 U.S. 787, 810 (1987) (plurality op.); *see United States v. Rosenthal*, 121 F. 862, 874 (C.C.S.D.N.Y. 1903).

18

Here, this Court should set aside the product of the AUSAs' unlawful exercise of authority. When the AUSAs purported to secure and sign the indictment in this case, they were exercising power that they "did not lawfully possess." *Collins*, 594 U.S. at 258. It was no different than if a private citizen, not representing the Executive Branch, went before the grand jury and purported to authorize its issuance of a charging instrument. Thus, the indictment is void and cannot stand.

G.    **Whether and how officers at Main Justice supervised the preparation and approval of Torres's superseding indictment**

Although this question was posed to the Government, Mr. Torres briefly addresses it. The Government may fail to produce *any* evidence (*i.e.*, documents or memorandum) demonstrating involvement by Main Justice in the grand jury presentment resulting in Mr. Torres's indictment. *See* ECF 98 at 43-46 (admitting "AUSAs reviewed and approved" indictment). If so, that would confirm that this prosecution was not "under the direction of the Attorney General." 28 U.S.C. § 516.

Moreover, even if the Government were to now claim that Main Justice officials directly supervised the Torres indictment, thus exercising the full powers of the New Jersey U.S. Attorney, that would only prove they were functioning as the very delegated *de facto* U.S. Attorney that this Court already held violates the FVRA's exclusivity provision. The statutory duties of the U.S. Attorney do not automatically revert to Main Justice officials during a vacancy. Unless the Government now claims the Attorney General herself supervised the Torres indictment, any such claimed supervision would be an impermissible reassignment of the vacant U.S. Attorney's Office's duties. As this Court held, absent a formal

19

reorganization, the FVRA dictates that the Attorney General "cannot reassign her own powers to other officials, nor one official's power to another, in order to authorize the performance of the functions and duties of the vacant office." Op. 64-66 & n.285 (citing 5 U.S.C. § 3347(b)); *see id.* at 57-58 (delegating the authority of the U.S. Attorney to subordinates "creat[es] a *de facto* United States Attorney" and "such a delegation violate[s] the FVRA's exclusivity provision").

In any event, the critical point is that the U.S. Attorney's Office continued grand jury presentments in contravention of the express determination by this Court on August 21, 2025, that Ms. Habba was unlawfully serving as the U.S. Attorney. This included the execution of Mr. Torres's superseding indictment on November 10, 2025 (132 days after Habba's tenure lawfully ended on July 1, 2025, and 50 days after the Office was informed she should not be signing indictments).

At minimum, it is clear that Main Justice (by virtue of the August 21, 2025 Order) was put on notice of the illegality of Habba's continued service. Indeed, the Government appealed the August 21, 2025, decision on August 25, 2025. The Third Circuit then affirmed on December 1, 2025. Ms. Habba "resigned" from her position seven days later. Against the backdrop of this procedural history, the U.S. Attorney's Office continued to operate to the detriment of Mr. Torres's constitutional rights. Thus, this Court should place no weight on the involvement of Main Justice in this matter (if any) because the extraordinary nature of the constitutional violation warrants dismissal of the superseding indictment.

## CONCLUSION

The superseding indictment should be dismissed.

20

Dated: March 19, 2026

Respectfully submitted,

DANIEL TORRES
By Counsel

/s/   *Jason J. LeBoeuf*
Jason J. LeBoeuf (#033612001)
Kerdesha Desir (#378182021)
ZIEGLER LAW GROUP LLC
651 Old W. Mt. Pleasant Avenue, Suite 150
Livingston, NJ 07039
Telephone: (973) 533-1100
jason@zlgllc.com

Ephraim A. McDowell
Elias S. Kim
COOLEY LLP
1299 Pennsylvania Ave. NW, Suite 700
Washington, DC 20004
Telephone:  (202) 842-7800

*Counsel for Defendant Daniel Torres*

21

## CERTIFICATE OF SERVICE

I hereby certify that, on this 19th day of March, 2026, a true copy of the foregoing document was filed electronically through the Court's CM/ECF system, which will send notification of such filing to all counsel of record.

/s/  *Jason J. LaBoeuf*

Jason J. LaBoeuf

*Counsel for Defendant Daniel Torres*

22